# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2013

No. 12-60221

Lyle W. Cayce
Clerk

MARIE BERNADETTE ABE EWONGKEM,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of
the Board of Immigration Appeals
No. A087-652-926

Before OWEN and HAYNES, Circuit Judges, and LEMELLE,[*] District Judge.

PER CURIAM:[**]

Marie Bernadette Abe Ewongkem petitions for review of the Board of Immigration Appeals's ("BIA") dismissal of her appeal of the Immigration Judge's ("IJ") denial of her application for asylum and withholding of removal. We DENY the petition.

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60221

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ewongkem, a native and citizen of Cameroon, entered the United States on a visitor's visa and subsequently filed an application for asylum.  Ewongkem was then charged with remaining in the United States longer than permitted.  In response, she renewed her application for asylum and sought withholding of removal.  Ewongkem seeks asylum based on her membership in a social group that advocates against female genital mutilation and because a village chief allegedly will kill her if she returns to Cameroon.

During her hearing before the IJ, Ewongkem testified that after college she worked for a women's rights organization that advocated against female genital mutilation.  Upon her father's death several years later, Ewongkem returned to his village for the burial.  Ewongkem testified that while there, she was kidnapped, held captive, and threatened with genital mutilation as a "preparation" to a forced marriage to the chief.  She further testified that she escaped with help of guards who then raped her causing severe injury.  Several months later, Ewongkem fled to the United States.  She expressed her fear that the chief—who she believed had killed the guards who helped her escape—and his remaining twenty-five guards would kill her if she returned to Cameroon.

The IJ rejected Ewongkem's claims for asylum and withholding of removal because she did not find Ewongkem credible regarding her claimed fear of return.[1]  Regardless, the IJ determined that she failed to show the necessary nexus between her past suffering and an enumerated ground for asylum.  Finally, the IJ reasoned that Ewongkem could relocate to another part of Cameroon, thereby avoiding any danger the chief and his guards posed.

---

[1]  The IJ did not believe that Ewongkem's fear of return was countrywide or that her fear of persecution was related to her membership in the advocacy group.  Rather, the IJ concluded that any fear of future persecution that Ewongkem had was based on the actions of individual criminals and personal conflict with the chief and that she could avoid the chief and his guards by living in a different part of the country.

No. 12-60221

Ewongkem appealed to the BIA, which dismissed her appeal and adopted the IJ's findings and conclusions in full.  Ewongkem then filed this petition for review.[2]

## II.  STANDARD OF REVIEW

"We review the BIA's findings of facts under the substantial evidence standard, [which provides that] . . . [t]he petitioner has the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Orellana-Monson v. Holder*, 685 F.3d 511, 517–18 (5th Cir. 2012) (citation and internal quotation marks omitted).  Indeed, "reversal is improper unless the court decides 'not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it.'"  *Id.* at 518 (quoting *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)).  Although we normally limit our review to the decision of the BIA, we will review the IJ's findings where, as here, the BIA adopts them.  *See Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).

## III.  DISCUSSION

Applying this extremely deferential standard of review compelled by statute, we decline to disturb the IJ's finding that Ewongkem was not credible regarding her claimed fear of return.  In so doing, we do not ourselves pass on the credibility of Ewongkem's testimony.  The REAL ID Act demonstrates Congress's "intent to provide more discretion to the IJ in determining the

---

[2] Because Ewongkem's only argument for relief pursuant to the Convention Against Torture ("CAT") is a conclusory assertion that "she would still have a successful CAT claim because the totality of the evidence shows that it is more likely than not that she will be tortured if returned to Cameroon," this issue was waived.  *See, e.g.*, *Douglas W. ex rel. D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 210–11 n.4 (5th Cir. 1998) ("[F]ailure to provide any legal or factual analysis of an issue on appeal waives that issue."); *Calderon-Ontiveros v. INS*, 809 F.2d 1050, 1052 (5th Cir. 1986) ("By failing to brief the voluntary departure and suspension of deportation issues, [the petitioner] has waived our consideration of them.").

credibility of the witnesses,"[3] and thus, we will not overturn "an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Wang*, 569 F.3d at 537–38 (citation and internal quotation marks omitted). The IJ must make explicit any adverse credibility determination, however, otherwise the witness has "a rebuttable presumption of credibility on appeal." 8 U.S.C. § 1158(b)(1)(B)(iii). Here, the IJ made such a finding, concluding that "[t]aking into [account the] totality [of] the circumstances and all relevant factors, [Ewongkem's] testimony was not considered to be inherently plausible for purposes of her claimed fear of return."

Moreover, in reaching a credibility determination, the "IJ may rely on *any* inconsistency or omission . . . as long as the totality of the circumstances establishes that an asylum applicant is not credible." *Wang*, 569 F.3d at 538 (citation and internal quotation marks omitted); *see also Pallapothula v. Holder*, No. 12-60531, 2013 U.S. App. LEXIS 10466, at *3 (5th Cir. May 23, 2013) (unpublished) ("The inconsistencies in [the applicant's] statements and testimony concerning alleged attacks . . . substantially support the adverse credibility determination."). In *Wang*, for instance, the IJ found the applicant not credible based on the discrepancies in her oral testimony and written application, the oral testimony's "vague, hesitant and evasive" nature, and "some minor, some significant" contradictions in her testimony. 569 F.3d at 534–35. In addition, the IJ found the applicant's "testimony about her incarceration and

---

[3] The REAL ID Act provides that an IJ should consider "the totality of the circumstances" when assessing credibility and may base this "determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements[,] . . . the internal consistency of each such statement, the consistency of such statements with other evidence of record[,] . . . and any inaccuracies or falsehoods in such statements." 8 U.S.C. § 1158(b)(1)(B)(iii). Significantly, this credibility evaluation may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id.*

beatings incredible due to [the petitioner's] lack of emotion that seemed to the IJ more consistent with one who has rehearsed a story, rather than one who lived the events." *Id.* at 535. We ultimately deferred to the IJ recognizing that "[t]he IJ has extensive experience with witnesses who assert persecution" and that "[a]n appellate court is not in a position to judge [a petitioner's] demeanor." *Id.* at 539–40.

Here, the IJ found that Ewongkem was not credible based on similar factors. The IJ explained that Ewongkem's testimony was "vague and lack[ing] detail," that her written application was "far more specific" than her oral testimony, and that her testimony was not "inherently plausible for purposes of her claimed fear of return." The IJ also found Ewongkem's testimony unbelievable because she "lacked any real emotional component as she described incidents of harm," and her oral testimony appeared somewhat scripted. *See id.* at 535.

Because the IJ stood in the best position to assess Ewongkem's demeanor, we defer to her experience making these difficult credibility determinations concerning applicants, like Ewongkem, who testify to having undergone enormous suffering. *See, e.g.*, *id.* at 539–40; *Wei Lin v. Holder*, No. 12-60475, 2013 U.S. App. LEXIS 5370, at *4 (5th Cir. Mar. 19, 2013) (unpublished) ("The IJ was in a unique position to assess credibility because the IJ was able to observe [the applicant's] demeanor and the general believability of [the applicant's] story at the hearing."). Further, the IJ's credibility determination is supported by substantial evidence in the record that Ewongkem's responses were vague and unresponsive.[4] *See* 8 U.S.C.A. § 1158 (listing responsiveness as

---

[4] Even apart from the increased deference granted to immigration judges under the REAL ID Act, our precedent would still compel us to deny the petition here. *See, e.g.*, *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (concluding that five inconsistencies in an applicant's oral testimony and written application constituted substantial evidence to support the IJ's adverse credibility determination). Indeed, several inconsistencies supported the IJ's credibility

No. 12-60221

a factor that an IJ is allowed to consider in determining credibility); *Zen Yao Lin v. Holder*, 470 F. App'x 351, 352 (5th Cir. 2012) (unpublished); *Xia Lin v. Holder*, 481 F. App'x 924, 925 (5th Cir. 2012) (unpublished).

Because a reasonable factfinder could reach the same adverse credibility determination as the IJ in light of the totality of the circumstances,[5] we must deny Ewongkem's petition for review.[6] *See Wang*, 569 F.3d at 540 (concluding "that the IJ's adverse credibility finding is supported by substantial evidence," when "[n]othing in [the applicant's] story compels a conclusion in her favor or supports  a conclusion by [the] court—one far removed from the hearing room—that no reasonable factfinder could disbelieve [her]"); *Yin Qing He v. Holder*, 449 F. App'x 367, 369 (5th Cir. 2011) (unpublished) (same).  The IJ's adverse credibility finding precludes Ewongkem from meeting her burden of proving a reasonable fear of return or that her fear was linked to an enumerated ground for asylum.  *See* 8 U.S.C. § 1158(b)(1)(B).

Accordingly, Ewongkem's petition is DENIED.

---

finding concerning Ewongkem.  For instance, there were discrepancies regarding Ewongkem's location when her mother died and her level of consciousness during portions of her escape from Cameroon.  Ewongkem's testimony also varied on more relevant issues, including the reason the chief targeted her, the threats to her brothers' safety, and the problems she previously encountered with her activism about female genital mutilation.

[5] Although Ewongkem's corroborating evidence bolsters portions of her account, it fails to substantiate her claimed fear of return in light of the record as a whole.

[6] Because we deny Ewongkem relief based on the IJ's adverse credibility finding, we do not address the IJ's alternative reasons for denying her relief.